STATE OF NORTH CAROLINA v. HOWARD MATTHEW JOYNER

No. 109

(Filed 15 August 1980)

1. **Searches and Seizures § 8– warrantless arrest upon probable cause – evidence from seizure of person admissible**

   There was no merit to defendant's contention that an officer, who arrested defendant without a warrant, had no probable cause to take him into custody and any evidence emanating from that illegal seizure of his person should be suppressed, since the evidence tended to show that the officer observed defendant some 3½ blocks from a rape victim's apartment some seven to ten minutes following the commission of the offenses of burglary, rape and larceny; the officer had earlier been alerted by police radio concerning the commission of the offenses and had been given a description of the offender as a black male with facial hair, wearing a toboggan and a green or blue jogging suit with white stripes down the sides of the trousers; when the officer observed defendant, he reconfirmed by radio this description; and the officer noted that defendant matched the description and placed him under arrest.

2. **Criminal Law §§ 42.2, 50– weapon used during rape – testimony that witness "assumed" it was a knife**

   In a prosecution for first degree rape, larceny, and first degree burglary, testimony by the victim that she "assumed" an object which defendant had in his hand during the commission of the crimes was a knife was not an inadmissible opinion or conclusion, since the witness was either giving her then instantaneous conclusion derived from a variety of facts presented to her senses or stating, in effect, that her impression, although indistinct, was that the object was a knife, and under either theory such testimony was admissible; moreover, the victim's statement that the object she had observed "could have been" State's Exhibit No. 1, which she described as a "black handled screwdriver with a bent end on it" and which, other evidence showed, was in defendant's possession at the time of his arrest, was likewise properly admitted into evidence, since any object having a relevant connection with the case is admissible in evidence, it not being necessary that the witness positively identify the object, and the witness could properly testify that what she saw and felt was consistent with its being either a knife or a screwdriver.

3. **Criminal Law § 89.10– rape victim – cross-examination as to prior misconduct – limitation not prejudicial**

   In a prosecution for first degree rape, larceny, and first degree burglary, defendant failed to show that he was prejudiced by the trial court's limiting of his cross-examination of the victim concerning prior acts of misconduct, since the victim answered the question before the jury notwithstanding the trial court's ruling; defendant had the benefit of his question from the trial court's ruling; defendant did not show any reasonable possibility that a

different result would have been reached at trial had the questioning been permitted; and the question was designed at most to impeach the victim's credibility as a witness, but her credibility was not a significant issue at this trial.

**4. Rape § 5– first degree rape – sufficiency of evidence**

　　In a prosecution for first degree rape evidence was sufficient to be submitted to the jury where it tended to show that the victim had been forced against her will to have sexual intercourse with a black male wearing a toboggan and jogging outfit while he held a long, cold, metallic object against her head which she thought was a knife but which could have been a screwdriver; several items were missing from the victim's apartment following the incident, including a cigarette lighter and some paperback books; within minutes of the alleged incident defendant was discovered 3½ blocks away dressed substantially as the victim had described her assailant; and found in his possession were several objects matching the description of objects missing from the victim's apartment, including two objects which she specifically identified as belonging to her.

**5. Rape § 6; Larceny § 8.4; Burglary and Unlawful Breakings § 6.5– possession of recently stolen property – relevancy in determining guilt of rape, larceny, burglary – offenses committed at same time**

　　In a prosecution for first degree rape, larceny, and first degree burglary, the trial court properly instructed the jury that it could consider defendant's possession of recently stolen property as a relevant circumstance in determining whether defendant was guilty of all the crimes charged against him where all of the crimes, including the larceny, occurred as a part of the same criminal enterprise.

**6. Burglary and Unlawful Breakings § 6.3– first degree burglary – felony committed – instructions not in conformity with indictment – harmless error**

　　In a prosecution for first degree rape, larceny, and first degree burglary, the trial court erred in instructing the jury that to convict defendant of burglary it must find that, at the time of the breaking and entering, defendant intended to commit rape *or* larceny, since the indictment alleged only that the breaking and entering occurred with the intent to commit larceny. However, defendant failed to meet his burden of showing that, had the error not been committed, a different result would have been reached at trial, since whether defendant intended to commit either larceny or rape or both at the time he entered the dwelling was a fact which must be inferred, if at all, from defendant's actions after he entered the victim's apartment; the evidence tended to show that defendant, once inside, committed both rape and larceny; the evidence that he intended to commit one of those crimes when he entered was therefore no weaker or stronger than the evidence that he intended to commit the other; and the jury found beyond a reasonable doubt that, once inside, defendant committed both.

　　Justice Brock did not participate in the consideration or decision of this case.

BEFORE Judge Seay at the 1 October 1979 Session of GUIL-FORD Superior Court defendant was convicted by a jury of first degree rape, larceny, and first degree burglary. He was sentenced to life imprisonment for the rape conviction; to not less than twenty-five nor more than fifty years for the first degree burglary conviction; and to not less than nine nor more than ten years for larceny; to begin at the expiration of the life term. He appeals pursuant to G.S. 7A-27(a). We allowed his motion to bypass the Court of Appeals on the convictions of first degree burglary and larceny on 27 February 1980.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the state.*

*Frederick G. Lind, Assistant Public Defender, for defendant appellant.*

EXUM, Justice.

Defendant assigns as error various rulings on the admission and exclusion of evidence, the denial of his motion to dismiss for insufficiency of evidence, and portions of the court's charge to the jury. For reasons stated in the opinion, we find that defendant's trial was free from prejudicial error.

Evidence for the state tended to show the following: At approximately 4:42 a.m. on 22 April 1979, Helen Young was awakened in her apartment in High Point, North Carolina, by a black male wearing a toboggan and a jogging suit. Ms. Young testified that the man had an object in his hand which she thought was a knife. He threatened her, placed the object against her head, and forced her to have intercourse with him. At approximately 5:00 a.m., just after the intruder left her apartment, Ms. Young called the police. She described the assailant as a bearded black male, wearing a toboggan and a jogging outfit with white stripes down the side. The description was dispatched to patrolling officers. At about 5:10 a.m., High Point police officer Neil Kearns saw defendant standing in a parking lot approximately three and one-half blocks from Ms. Young's apartment. He was wearing a two-piece, lime green jogging suit and a brown toboggan. Kearns stopped defendant

and confirmed by radio the victim's description. Kearns placed defendant in his patrol car. Subsequently Kearns found on or near defendant some paperback books and a cigarette lighter, which Ms. Young later identified as having been missing from her apartment since the incident with her assailant.

Defendant testified in his own behalf and offered evidence tending to show that around midnight on 21 April 1979, he began jogging and walking around High Point. He testified that he found the paperback books, the lighter and some cigarettes on the ground just before Kearns arrested him. Defendant denied committing any of the acts charged.

The jury returned verdicts of guilty of first degree rape, first degree burglary and larceny.

[1]  Defendant first assigns as error the denial of his motion to suppress physical evidence seized from him and a pre-trial statement made by him as being the fruits of an illegal arrest. Relying on *Dunaway v. New York*, 442 U.S. 200, 99, S. Ct. 2248, 60 L. Ed. 2d 824 (1979), defendant contends that Kearns had no probable cause to take him into custody and therefore any evidence emanating from that illegal seizure of his person should be suppressed. We disagree.

In *Dunaway, supra*, the United States Supreme Court held that the seizure of one's person for custodial questioning amounts to an arrest and must be supported by probable cause. If not the arrest is illegal, and any incriminating evidence obtained by its exploitation is inadmissible. Our inquiry, then, must focus on whether Kearns had probable cause to arrest defendant at the time he took defendant into custody.

Probable cause exists when there is "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973); 5 Am. Jur. 2d, *Arrest* § 44 (1962). The existence of probable cause depends upon "whether at that moment the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to

State v. Joyner

warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 279 U.S. 89, 91 (1964).

Here the trial court conducted a *voir dire* hearing to determine the admissibility of the evidence challenged by defendant's motion to suppress. The court found facts and concluded that probable cause for defendant's arrest existed and that defendant "was lawfully seized and lawfully arrested."

Facts found by the trial court included the following: Kearns observed defendant some three and one-half blocks from Ms. Young apartment "some seven to ten minutes following the commission of the . . . offenses." Kearns had earlier been alerted by police radio of the commission of the offenses against Ms. Young and had been given a description of the offender as a black male with facial hair, wearing a toboggan and a green or blue jogging suit with white stripes down the sides of the trousers. When Kearns observed defendant, he reconfirmed by radio this description. Kearns noted that defendant matched the description and placed him under arrest. These findings are amply supported by evidence adduced at the suppression hearing; therefore, they are conclusive on appeal. *State v. Huskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971). The findings, in turn, fully warrant the trial judge's conclusion that Officer Kearns had probable cause to believe that defendant was the offender in question. The proximity of defendant to the place of the offense and the similarity of his appearance to the description given by Ms. Young of her assailant provided Kearns with the probable cause prerequisite to a lawful arrest. *See State v. Jacobs*, 277 N.C. 151, 176 S.E. 2d 744 (1970) and cases cited therein. This assignment of error is overruled.

[2] Defendant next assigns as error the admission into evidence of the following testimony by Ms. Young:

"Q. Just describe to them the best you saw him right there.

A. He was standing over me, I saw him standing over me, he had something in his right hand, and I assumed it was a knife.

MR. LIND: Object, and move to strike.

THE COURT: Overruled.

The object he had in his hand was roughly six or eight inches long. He was holding it like this in his hand. (Indicating.)

MR. KIMEL: May I approach the witness, Your Honor?

THE COURT: All right.

TO THE FOLLOWING QUESTION AND ANSWER, THE DEFENDANT IN APT TIME OBJECTED AND NOW OBJECTS AND EXCEPTS AND THIS CONSTITUTES DEFENDANT'S

EXCEPTION NO. 5

Q. Let me show you what's been marked for identification as State's Exhibit 1. I will ask you to examine State's Exhibit Number 1, if you would. Do you recognize State's Exhibit Number 1?

A. It could have been what he was holding in his hand."

Defendant contends the witness should not have been permitted to testify that she "assumed" the object was a knife inasmuch as such testimony constitutes an inadmissible opinion or conclusion. He also argues that her last answer is merely speculative and therefore inadmissible.

Ordinarily a lay witness is not permitted to give opinion or make conclusions. *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1977). A witness, not an expert, may testify only to that which "he has apprehended by any of his five senses or all of them together." *State v. Fentress*, 230 N.C. 248, 52 S.E. 2d 795 (1949). A witness may, however, testify as to "instantaneous conclusions ... derived from observation of a variety of facts presented to the senses at one and the same time." *State v. Leak*, 156 N.C. 643, 647, 72 S.E. 567, 568 (1911). *See generally* 1 Stansbury's North Carolina Evidence § 125 (Brandis Rev. 1973). Further-

more, "[w]hen terms such as 'I think,' 'my impression is' or 'I believe' connote an indistinctiveness of perception or memory, they are not objectionable although they may carry little weight." *State v. Henderson,* 285 N.C. 1, 15, 203 S.E. 2d 10, 20 (1974), *death sentence vacated,* 428 U.S. 902 (1976); *State v. Carson,* 296 N.C. 31, 249 S.E. 2d 417 (1978) (prosecuting witness' testimony that she "thought" she saw a knife held competent).

Here after the portions of her testimony in question, Ms. Young also testified that her assailant held [indicating] an "object" in his hand which was "roughly six or eight inches long"; that this object was "placed beside my head during the time of the sexual intercourse"; that she then "felt the cold metal of it." Later on cross-examination, Ms. Young testified, "I thought the object in [my assailant's] hand was a knife. He was holding it in his right hand, he was standing over me with it in his right hand."

It is clear enough, therefore, that when Ms. Young testified that she "assumed" the object which she saw and felt was a knife, she was either giving her then instantaneous conclusion derived from "a variety of facts presented" to her senses or stating, in effect, that her impression, although indistinct, was that the object was a knife. Under either theory this portion of her testimony was correctly admitted into evidence.

Her statement that the object she had observed "could have been" State's Exhibit No. 1, which she described as a "black handled screwdriver with a bent end on it" and which, other evidence showed, was in defendant's possession at the time of his arrest, was likewise properly admitted into evidence. "So far as the North Carolina decisions go, any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials." 1 Stansbury's North Carolina Evidence § 118 (Brandis Rev. 1973). It is not necessary that the witness positively identify the object. "His lack of positive identification affects the weight of his testimony rather than its admissibility." *State v. Fikes,* 270 N.C. 780, 155 S.E. 2d 277 (1967) ("I cannot absolutely identify it . . . but [pistol] looks exactly like mine."); *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4 (1967) (bank bags looked "similar to" the ones the witness had seen on the night of the alleged crime); *State v. Patterson,* 284 N.C. 190, 200

S.E. 2d 16 (1973) ("[t]his is either the shotgun or very similar to the one I saw. . . ."). *See generally* 1 Stansbury's, *supra*, § 129.

The thrust of Ms. Young's entire testimony on this point is that her senses of sight and touch led her to instantaneously conclude or indistinctly perceive at the time of the incident that the object was a knife; but upon reflection, what she actually saw and felt at the time was not inconsistent with the object's being a screwdriver like State's Exhibit No. 1. She could not at trial be sure that it was a knife or a screwdriver. She was sure that it was six or eight inches long, that it felt cold and metallic against her head, and that what she saw and felt was consistent with its being either a knife or a screwdriver. The jury must have so understood her testimony. It was proper for her to so testify.

[3] By his third assignment of error, defendant contends that the trial court erred in sustaining the state's objection to his questioning the prosecutrix concerning prior acts of misconduct. During defendant's cross-examination of Ms. Young the following exchange occurred:

> Q. Now, isn't it true that you smoked marijuana the weekend before that?
>
> MR. KIMEL: Objection, what's that got to do with this case?
>
> THE WITNESS: If you are talking about —
>
> THE COURT: Sustained.
>
> MR. LIND: I'd like her answer in the record, Judge.
>
> THE COURT: All right, mark the question.
>
> THE WITNESS: If you are talking about Easter weekend, yes, I did."

Later during a break in the trial and in the absence of the jury the following transpired:

"THE COURT: All right. Read the next question.

THE COURT REPORTER: The question asked by Mr. Lind: Isn't it true that you smoked marijuana the weekend before that?

THE COURT: Answer the question.

THE WITNESS: I told him if he was talking about the weekend before that, if it was Easter weekend, it was."

Defendant contends that he was entitled to cross-examine Ms. Young regarding her prior acts of misconduct even if she has not been criminally convicted of them. *See State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975). Nonetheless defendant's assignment of error on this point must fail. The record shows that Ms. Young answered the question affirmatively before the jury notwithstanding the trial court's ruling. Defendant got the benefit of his question from the trial court's ruling. Even if the impact of the witness' answer was diminished by the ruling of the trial court, defendant has not shown any "reasonable possibility that, had the error ... not been committed, a different result would have been reached at the trial." G.S. 15A-1443(a). The question was designed at most to impeach the victim's credibility as a witness. Yet her credibility was not a significant issue at this trial. Her testimony essentially established only that she was the victim of several criminal offenses. The primary defense was not that the witness was not in fact a victim, but that defendant was not the perpetrator. The witness never purported to identify defendant as her assailant. The state sought to establish this identity by other evidence.

[4] Defendant next assigns as error the denial of his motion to dismiss the charge of rape for insufficiency of the evidence. In support of this assignment, he argues that there was no direct identification evidence and that other circumstantial evidence was insufficient to identify him as the culprit. We disagree.

"A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the state, and the state is entitled to every reasonable intendment and every

reasonable inference to be drawn therefrom." *State v. McKinney,* 288 N.C. 113, 117, 215 S.E. 2d 578, 581 (1975). "The test of the sufficiency of the evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both." *State v. Cutler,* 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). "The question for the court is whether there is substantial evidence to support a finding both that an offense charged in the bill of indictment has been committed and that defendant committed it." *State v. Roseman,* 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971). For purposes of ruling on the motion, the court takes as true all of the state's evidence; whether the testimony is true or false and what it proves or fails to prove are matters for the jury. *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107 (1950).

Applying these well-established principles, we hold that there was ample evidence to submit the charge of first degree rape to the jury. Ms. Young testified that she had been forced against her will to have sexual intercourse with a black male wearing a toboggan and jogging outfit while he held a long, cold, metallic object against her head which she thought was a knife but which could have been a screwdriver. She also testified concerning several items which were missing from her apartment following the incident, including a cigarette lighter and some paperback books. Within minutes of the alleged incident defendant was discovered three and one-half blocks away dressed substantially as Ms. Young had described her assailant. Found in his possession were several objects matching the description of objects missing from Ms. Young's apartment, including two objects which she specifically identified as belonging to her. Assuming the state's evidence to be true, we hold it ample to survive defendant's motion to dismiss.

[5] Defendant next contends the trial court erred in charging the jury on the doctrine of recent possession as it related to the rape charge. The trial court's instructions to the jury on circumstantial evidence included the following challenged instruction:

"Further, members of the jury, the State of North Carolina seeks to establish the defendant Howard Matthew Joyner's guilt, in part, by the doctrine of 'Recent Posses-

sion.' For this doctrine to apply, in this case, the State must prove these three things, and do so beyond a reasonable doubt. First: that the L&M cigarettes, the three books, the cigarette lighter and the eighteen dollars in currency was stolen. Second: that the defendant, Joyner, had possession of these same items of property that I have just designated; and a person possesses books and cigarettes and cigarette lighter and money, when he is aware of its presence and has, either by himself or together with others, both the power and intent to control its disposition or use. And third: that the defendant, Joyner, had possession of these particular items of property so soon after these items were stolen, and understood such circumstances as to make it unlikely that he obtained possession honestly. If you find these things from the evidence, beyond a reasonable doubt, you may consider them, together with all the other facts and circumstances in deciding whether or not the defendant is guilty of rape, burglary and larceny."

Defendant contends it was error to instruct the jurors that they could consider his recent possession of stolen goods as a circumstance tending to prove him guilty of rape. Under the facts of this case we disagree.

It is well established that the "possession of stolen property recently after the theft, and under circumstances excluding the intervening agency of others; affords presumptive evidence that the person in possession is himself the thief, and the evidence is stronger or weaker, as the possession is nearer to or more distant from the time of the commission." *State v. Patterson*, 78 N.C. 470, 472-473 (1878). While the fact of recent possession has been said to raise a "presumption," it is more accurately deemed to raise a permissible inference that the possessor is the thief. *State v. Frazier*, 268 N.C. 249, 150 S.E. 2d 431 (1966). "The presumption, or inference as it is more properly called, is one of fact and not of law. The inference derived from recent possession 'is to be considered by the jury merely as an evidentiary fact along with other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt.' " *State v. Fair*, 291 N.C. 171, 173, 229 S.E. 2d 189, 190 (1976). The infer-

State v. Joyner

ence which arises, however, is that the possessor is the thief. *Id.*

While the trial judge here referred to the "doctrine of recent possession," he nowhere charged that the fact of possession raised a presumption or even an inference that defendant was guilty of any of the crimes charged against him. He merely stated that the jury might consider defendant's recent possession "together with all the other facts and circumstances in deciding whether or not the defendant is guilty of rape, burglary and larceny." Here the evidence tends to show that the larceny, burglary and rape all occurred at or about the same time as part of one criminal enterprise committed by the same assailant. Under these circumstances defendant's recent possession of the stolen property is a circumstance tending to show that defendant was present in Ms. Young's apartment at the time the rape occurred. Therefore it is a circumstance which the jury was entitled to consider on the question of defendant's guilt not only of the larceny but also of the rape. "Whenever goods have been taken as a part of the criminal act, the fact of subsequent possession is some indication that the possessor was the taker, *and therefore the doer of the whole crime.*" 1 Wigmore on Evidence § 153 (3d Ed. 1940). (Emphasis added.) In *Williams v. Commonwealth,* 29 Pa. 102, 106 (1857), it was correctly stated that "possession of the fruits of the crime is of great weight in establishing the proof of murder, where that crime has been accompanied with robbery." *See also People v. Jackson,* 182 N.Y. 66, 74 N.E. 565 (1905).

We hold, therefore, that the trial judge properly instructed the jury that it could consider defendant's recent possession of the stolen property as a relevant circumstance in determining whether defendant was guilty of all the crimes charged against him, where, as here, all of the crimes including the larceny occurred as a part of the same criminal enterprise.

[6] By his sixth assignment of error defendant contends the trial court erred in charging on the felonious intent prerequisite to defendant's guilt of burglary. The court instructed the jury that to convict defendant of burglary it must find that at the time of the breaking and entering the defendant in-

tended to commit rape *or* larceny. The indictment alleged only that the breaking and entering occurred with the intent to commit larceny. Defendant argues that the state is bound by that theory of the case; therefore the trial court erred in instructing on rape as an alternative specific felonious intent.

A specific felonious intent is an essential element of burglary which must be alleged and proved. *State v. Thorpe,* 274 N.C. 457, 164 S.E. 2d 171 (1968). The state is held to proof of the intent alleged in the indictment, and it is error for the trial judge "to permit a jury to convict upon some abstract theory not supported . . . by the bill of indictment." *State v. Dammons,* 293 N.C. 263, 237 S.E. 2d 834 (1977); *State v. Thorpe, supra; State v. Jones,* 227 N.C. 94, 40 S.E. 2d 700 (1946). We therefore hold that the trial court erred in submitting for the jury's consideration a specific felonious intent not alleged in the indictment.

Nevertheless, we hold the error here is harmless. Defendant has failed to meet his burden of showing that, "had the error in question not been committed, a different result would have been reached at the trial." G.S. 15A-1443(a). Whether defendant intended to commit either larceny *or* rape or both at the time he entered the dwelling is a fact which in this case must be inferred, if at all, from defendant's actions after he entered. The evidence tended to show that defendant, once inside, committed both rape and larceny. The evidence therefore that he intended to commit one of these crimes when he entered is no weaker or stronger than the evidence that he intended to commit the other. The jury found beyond a reasonable doubt that once inside, defendant committed both. Under these circumstances we are satisfied that the result would have been the same on the burglary charge had the judge limited the jury's consideration on the specific intent element to larceny as charged in the indictment.

Defendant's remaining assignments of error are formal and require no further discussion.

Defendant received a fair trial free from prejudicial error.

No error.

Justice BROCK did not participate in the consideration or decision of this case.