BERGER, Judge.
On August 31, 2017, a McDowell County jury convicted Jeffery Daniel Waycaster ("Defendant") of possession or transportation of five or more counterfeit instruments. Defendant admitted to having attained habitual felon status, and he was sentenced to 102 to 135 months in prison. Defendant appeals, arguing that the trial court erred by (1) denying his motion to dismiss for insufficiency of the evidence, and (2) awarding $1,680 in attorney's fees. The trial court did not err when it denied Defendant's motion to dismiss; however, we vacate the trial court's award of attorney's fees and remand for a new hearing on that issue.
Factual and Procedural Background
The evidence at trial tended to show that in September 2015, Defendant and his girlfriend, April Evans ("Evans"), moved into a residence with Bruce Beam ("Beam"). Defendant asked Beam if he and Evans could use Beam's printer. Beam said no. During the weekend of September 26 and 27, 2015, Defendant and Evans used Beam's printer while Beam was away to make counterfeit twenty dollar bills. Beam subsequently discovered that Defendant and Evans had been printing counterfeit money on his printer, and Beam told them they had to leave immediately.
Before they left, Defendant asked if he could borrow Beam's car. Beam gave Defendant permission to use the car, provided Defendant return the vehicle later that night. Defendant used Beam's vehicle, but never returned it. Instead, Evans and Defendant drove to Old Fort, North Carolina to purchase methamphetamine with the counterfeit money.
On September 28, 2015, a friend told Beam that he saw Defendant in Beam's car in a Walmart parking lot. Beam called police and notified them of Defendant's location and that Defendant had stolen his vehicle. When Beam arrived at the parking lot, Beam told Defendant that he wanted his car back. Defendant refused and drove away. Defendant stopped at Shelba's Diner where he was met by police.
Detective Billie Brown ("Detective Brown") of the McDowell County Sheriff's Department was dispatched to a call of a possible stolen vehicle at Shelba's Diner. Defendant was identified as the driver of the stolen vehicle. After Detective Brown had arrived at the Diner, Defendant gave Detective Brown consent to search the vehicle, but advised that the vehicle belonged to Beam. Detective Brown then obtained permission to search from Beam. Detective Brown found $620.00 in sheets of fake twenty dollar bills located in a pocket behind the driver's seat. Two sheets of the paper appeared to have had counterfeit bills cut out and removed.
Defendant told Detective Brown that his former roommate, Jimmy Bud Lowery ("Lowery"), had been printing counterfeit money out of his residence. Defendant claimed that Lowery paid Evans, who had also lived at Lowery's residence, in pills to assist in printing counterfeit bills.
Defendant was subsequently indicted for possession or transportation of five or more counterfeit instruments, forging and counterfeiting currency, and having obtained habitual felon status. At trial, the State presented two witnesses and introduced a statement made by Defendant. Defendant did not present any evidence.
Defendant made a motion to dismiss for insufficiency of the evidence, which the trial court denied. On August 28, 2017, Defendant was found not guilty of forgery of United States currency and guilty of possession or transportation of five or more counterfeit instruments. Defendant then pleaded guilty to having obtained habitual felon status and was sentenced to 102 to 135 months in prison. In addition, the trial court awarded Defendant's court-appointed counsel $1,680 in attorney's fees.
Defendant did not give adequate notice of appeal. In our discretion, we grant his petition for a writ of certiorari and address the merits of Defendant's appeal. Defendant argues that the State presented insufficient evidence to support his conviction. In addition, he argues that the trial court awarded attorney's fees without granting him an opportunity to be heard. We address each argument in turn.
Analysis
I. Motion to Dismiss
Defendant first argues that the trial court erred when it denied his motion to dismiss for insufficiency of the evidence. Specifically, Defendant contends that the State did not prove that he possessed or transported five or more counterfeit instruments and that he had the requisite intent to injure or defraud. We disagree.
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 160 (1960) (citations omitted). "Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor." State v. Coley , --- N.C. App. ----, ----, 810 S.E.2d 359, 363 (2018) (citation omitted).
Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
Fritsch, 351 N.C. at 379, 526 S.E.2d at 455 (purgandum[1] ).
An individual may be convicted of possession or transportation of five or more counterfeit instruments if that person
[1] transports or possesses [2] five or more counterfeit instruments [3] with the intent to injure or defraud any person, financial institution, or governmental unit. ...
N.C. Gen. Stat. § 14-119(b) (2017).
Possession of contraband may be established by a showing of either actual or constructive possession. State v. Matias , 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001). "Constructive possession exists when the defendant, while not having actual possession ... has the intent and capability to maintain control and dominion over the [contraband]." Id. (citation and quotation marks omitted). Constructive possession typically applies "in cases when a defendant does not have actual possession of the contraband, but the contraband is found in a home or in a vehicle associated with the defendant." State v. Chekanow , 370 N.C. 488, 491, 809 S.E.2d 546, 549 (2018).
[A] driver of a borrowed car, like the owner of the car, has the power to control the contents of the car. Thus, where contraband material is under the control of an accused, even though the accused is the borrower of a vehicle, this fact is sufficient to give rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury. The inference is rebuttable, and if the owner of a vehicle loans it to an accused without telling him what is contained within the vehicle, the accused may offer evidence to that effect and thereby rebut the inference.
State v. Glaze , 24 N.C. App. 60, 64, 210 S.E.2d 124, 127 (1974).
In addition to possession, a defendant may be convicted of violating Section 14-119(b) by transporting five or more counterfeit items. When analyzing the transportation of contraband, "[o]ur courts have determined that even a very slight movement may be 'real' or 'substantial' enough to constitute 'transportation' depending upon the purpose of the movement and the characteristics of the areas from which and to which the contraband is moved." State v. McRae , 110 N.C. App. 643, 646, 430 S.E.2d 434, 436 (1993).
In addition, the State must prove that Defendant had the requisite intent. Our Supreme Court has stated that "it is not essential that any person be actually defrauded or that any act be done other than the fraudulent making or altering of the instrument." State v. Williams , 291 N.C. 442, 447, 230 S.E.2d 515, 518 (1976). "While intent is a state of mind sometimes difficult to prove, the mind of an alleged offender may be read from his acts, conduct, and inferences fairly deducible from all the circumstances." State v. Wilson , 315 N.C. 157, 163, 337 S.E.2d 470, 474 (1985).
Here, the record reflects substantial evidence from which the jury could infer Defendant possessed and transported counterfeit currency. The State presented substantial evidence that Defendant exercised dominion and control over the vehicle and its contents. Defendant occupied and possessed the vehicle for two days prior to Defendant's arrest. At the time of his arrest, the counterfeit money was located in the pocket behind the driver's seat in close proximity to where Defendant had been sitting. There was evidence from which the jury could infer counterfeit bills had been recently cut for use. This evidence alone was sufficient for the jury to infer dominion and control of the counterfeit currency by Defendant. Moreover, Beam's testimony that he had witnessed Defendant operate the vehicle in which the counterfeit money was found was sufficient, based upon all of the evidence, to support a finding of transportation. Therefore, the State presented substantial evidence from which the jury could infer possession and transportation of the counterfeit currency.
Moreover, the evidence tended to show that Defendant exhibited the requisite intent to injure or defraud when he used the counterfeit money to purchase methamphetamine in Old Fort two days before he was arrested. Also, at the time of arrest, a sheet with two bills removed was found in the back pocket of the driver's seat, tending to show that some counterfeit currency had been used. There is a reasonable inference from these acts that Defendant used or intended to use five or more counterfeit instruments with the intent to injure or defraud.
II. Attorney's Fees
Defendant next argues that the trial court erred in awarding attorney's fees without granting Defendant an opportunity to be heard. The State concedes that the trial court did not consult Defendant prior to awarding attorney's fees.
This Court recently held in State v. Friend :
Before entering monetary judgments against indigent defendants for fees imposed by their court-appointed counsel ..., trial courts should ask defendants-personally, not through counsel-whether they wish to be heard on the issue. Absent a colloquy directly with the defendant on this issue, the requirements of notice and opportunity to be heard will be satisfied only if there is other evidence in the record demonstrating that the defendant received notice, was aware of the opportunity to be heard on the issue, and chose not to be heard.
State v. Friend , --- N.C. App. ----, ----, 809 S.E.2d 902, 907 (2018).
Here, the following exchange occurred between the trial court and Defendant's court-appointed counsel:
THE COURT: Given the length of sentence, I don't believe he is eligible for immediate work release, but I will recommend work release at such time as he qualifies under the DAC guidelines and direct his attorney fee be paid out of those work release earnings. Any idea how much time you have, Mr. Oglesby?
[Defense Counsel]: 24
THE COURT: 24 hours?
[Defense Counsel]: Yes, sir.
THE COURT: By my count that's $1,680-does that sound right-to be entered as a civil judgment. That will be satisfied out of work release earnings in the event he is granted that. All right. Sir, good luck to you, [Defendant].
As this exchange reflects the only colloquy concerning attorney's fees in the record, we agree that Defendant was not provided an opportunity to be heard. The trial court did not discuss attorney's fees directly with Defendant, and the record does not indicate that Defendant received both the notice and the opportunity to be heard required by Friend . Accordingly, we vacate the portion of the judgment regarding attorney's fees and remand.
Conclusion
The trial court did not err in denying Defendant's motion to dismiss. However, the trial court erred when it awarded attorney's fees without providing Defendant an opportunity to be heard. Therefore, we vacate the trial court's award of attorney's fees and remand.
NO ERROR IN PART; VACATED AND REMANDED IN PART.
Report per Rule 30(e).
Judges STROUD and DILLON concur.

Our shortening of the Latin phrase "Lex purgandum est. " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.